STATE OF NORTH CAROLINA v. GILBERT PURCELL

No. 83

(Filed 16 March 1979)

**Criminal Law § 86.5— impeachment of defendant—prior act—informal accusations—questions improper**

The prosecutor's questions, "You have killed somebody haven't you, Mr. Purcell?" and "Well, it was known all around town that you killed somebody weren't it?" which were asked of defendant on cross-examination fell outside the scope of the rule allowing cross-examination for purposes of impeachment as to prior specific acts of degrading conduct, since the first question did not ask about some identifiable specific act on defendant's part and did not show by its phrasing that the act was wrongful, and since the second question asked defendant to report informal accusations that had been made against him in the community and was clearly improper.

Justices BRITT and BROCK did not participate in the consideration or decision of this case.

ON petition for discretionary review of a decision of the Court of Appeals, rendered in an unpublished opinion by *Judge Vaughn* with *Judges Britt* and *Arnold* concurring, finding no error in defendant's conviction for manslaughter at the 18 August 1975 Session of HARNETT Superior Court before *Judge Brewer.* Defendant was sentenced to serve not less than 12 nor more than 15 years in prison. This case was docketed and argued as No. 94 at the Spring Term 1978.

*Rufus L. Edmisten, Attorney General, by John R. B. Matthis, Special Deputy Attorney General, for the State.*

*DeMent, Redwine & Askew, by Russell W. DeMent, Jr., Attorneys for defendant appellant.*

EXUM, Justice.

Defendant contends the trial court committed prejudicial error in refusing to sustain his objections to two questions asked him on cross-examination by the prosecutor. These questions were "You have killed somebody haven't you, Mr. Purcell?" and "Well, it was known all around town that you killed somebody weren't it?" We agree with defendant that these questions, in the form in which they were asked, fall outside the scope of our rule

State v. Purcell

allowing cross-examination for purposes of impeachment as to prior specific acts of degrading conduct. We therefore order that defendant receive a new trial.

For some time prior to 31 March 1975, there had been bad feelings between defendant and George Willie Carroll over defendant's alleged relationship with Carroll's estranged wife. On 31 March Carroll went to defendant's house and confronted him, using abusive language and threatening him. Defendant tried to get Carroll to leave. Carroll would not. Defendant then got up and left the room, returning with a pistol tucked in the waistband of his pants. Witnesses for the state testified that the argument continued after defendant returned, and shortly thereafter he shot and killed Carroll. They stated that there was no weapon on George Carroll's person either before or after the killing and that he made no movement indicating he was reaching for a weapon. Witnesses for defendant testified that Carroll made a movement toward the inside of his jacket just prior to the shooting. Defendant himself stated, "George Carroll reached down in his belt and at that time I spied a black handle pistol, and when he went for it I shot him." Investigating officers found a .32 caliber pistol on Carroll's body.

In the course of the prosecutor's cross-examination of defendant, the following exchanges took place:

"Q. You have killed somebody haven't you, Mr. Purcell?

MR. STEWART: Object, your Honor.

A. I haven't never been found guilty of murder.

COURT: Overruled.

Q. I didn't ask you that?

MR. STEWART: Your Honor, we submit he can ask him what he has been tried and convicted of.

COURT: He asked him a direct question 'If he killed somebody' that is a proper question.

Q. Have you ever killed anybody, Gilbert?

MR. STEWART: Object.

COURT: Overruled.

State v. Purcell

A. (pause)

Q. Yes or no?

A. Yes, sir.

EXCEPTION NO. 1

. . . .

Q. Well, it was known all around town that you killed somebody weren't it?

MR. STEWART: Objection to what is known all around town.

COURT: Overruled.

Q. What?

A. Sir?

Q. Did you hear my question?

A. No, I didn't.

MR. STEWART: Object to arguing with the witness, your Honor.

COURT: Overruled.

Q. It was known all around town that you had killed somebody weren't it?

MR. STEWART: Object.

COURT: Overruled.

A. Yes, sir. They've said I've killed somebody. I wasn't found guilty of—I wasn't found guilty of murder.

Q. This is the second person you have killed?

MR. STEWART: Object.

COURT: Overruled.

A. Sir?

Q. This is the second person you have killed?

State v. Purcell

A. That is the second person I've been charged with.

EXCEPTION NO. 2."

Defendant has assigned as error the trial judge's overruling of his objections in each of these instances.

Defendant's character had not been put in issue. These questions were thus proper, if at all, for the purpose of impeaching defendant's credibility as a witness. There is no indication in the record that defendant was ever convicted for the act about which the prosecutor questioned him.[1] This case therefore concerns the manner in which a criminal defendant can be cross-examined for the purpose of impeaching his credibility by questions about prior bad acts that did not result in criminal convictions.

In *State v. Foster*, 284 N.C. 259, 200 S.E. 2d 782 (1973), the prosecutor was permitted to ask a criminal defendant on cross-examination whether he had committed certain other crimes for which he had not been tried and convicted. This Court held such inquiries to be proper, stating the rule as follows, *id.* at 275, 200 S.E. 2d at 794:

"When a defendant elects to testify in his own behalf, he surrenders his privilege against self-incrimination and knows he will be subject to impeachment by questions relating to *specific acts* of criminal and degrading conduct. Such 'cross-examination for the purpose of impeachment is not limited to conviction of crimes. Any act of the witness which tends to impeach his character may be inquired about or proven by cross-examination.'" (Emphasis added.) (Citations omitted.)

In *State v. Williams*, 279 N.C. 663, 185 S.E. 2d 174 (1971), defendant was being tried for armed robbery. On cross-examination he was asked whether he was under indictment in three other towns for armed robbery. This Court, speaking through Chief Justice Bobbitt, found such an inquiry improper, holding that a defendant cannot for purposes of impeachment be cross-examined as to whether he has been indicted for criminal of-

---

1. The question was obviously put to defendant in the form of whether he had "killed somebody," not whether he had been criminally convicted for a homicide. Defendant admitted doing the act but later said he was found not guilty of criminal charges brought in connection with it. Defendant contends in his brief that the killing occurred in 1958 and that defendant was acquitted of the charges against him on grounds of self-defense. There is no showing in the record to this effect.

fenses unrelated to the one for which he is standing trial. The Court went on to say, *id.* at 672, 185 S.E. 2d at 180:

> "*[F]or purposes of impeachment,* a witness, including the defendant in a criminal case, may *not* be cross-examined as to whether he had been *accused,* either informally or by affidavit on which a warrant is issued, of a criminal offense unrelated to the case on trial, nor cross-examined as to whether he has been *arrested for* such unrelated criminal offense." (Emphasis original.)

The Court in *Williams* concluded by distinguishing between the kinds of questions it disapproved and proper inquiries about prior bad acts used to discredit a criminal defendant's testimony, *id.* at 675, 185 S.E. 2d at 181:

> "It is permissible, for purposes of impeachment, to cross-examine a witness, including the defendant in a criminal case, by asking disparaging questions concerning collateral matters relating to his criminal and degrading conduct. Such questions relate to matters *within the knowledge of the witness,* not to accusations of any kind made by others. We do not undertake here to mark the limits of such cross-examination except to say generally (1) the scope thereof is subject to the discretion of the trial judge, and (2) the questions must be asked in good faith." (Citations omitted.) (Emphasis original.)

Thus a criminal defendant who takes the stand may be cross-examined for purposes of impeachment concerning any prior specific acts of criminal and degrading conduct on his part. Such acts need not have resulted in a criminal conviction in order to be appropriate subjects for inquiry. The scope of inquiry about particular acts is, however, within the discretion of the trial judge, and questions concerning them must be asked in good faith. It is not permissible to inquire for purposes of impeachment as to whether a defendant has previously been arrested or indicted for or accused of some unrelated criminal or degrading act.

Here the prosecutor asked defendant, "You have killed somebody haven't you, Mr. Purcell?" We think this question was improper because it did not inquire about some identifiable specific act on defendant's part. The question does not refer to

the time or the place or the victim or any of the circumstances of defendant's alleged prior misconduct. *Compare, State v. Hankerson*, 288 N.C. 632, 220 S.E. 2d 575 (1975), *rev'd on other grounds*, 432 U.S. 233 (1977) (manner of assault, *i.e.*, shooting, specified); *State v. Black*, 283 N.C. 344, 196 S.E. 2d 225 (1973) (manner of assault and names of victims included in question); *State v. Mack*, 282 N.C. 334, 193 S.E. 2d 71 (1972) (date and specific nature of criminal activity mentioned). It is instead almost categorical in nature, as is illustrated by the way the prosecutor rephrased it: "Have you ever killed anybody, Gilbert?" We specifically disapproved of this type of question in *State v. Mason*, 295 N.C. 584, 248 S.E. 2d 241 (1978). There defendant sought to cross-examine a witness for the prosecution by asking him, "Were you involved in what you call street gang operations in New York?" The trial court sustained an objection to this question and we affirmed, noting that it did not "concern a *particular act* of misconduct." Id. at 593, 248 S.E. 2d at 247. (Emphasis original.)

The purpose of permitting inquiry into specific acts of criminal or degrading conduct is to allow the jury to consider these acts in weighing the credibility of a witness who has committed them. For this purpose to be fulfilled, the questions put to the witness must enlighten the jury in some degree as to the nature of the witness' act. Questions so loosely phrased as the one here give the jury no clear indication about the witness' credibility. Under our law and the mores of our society, killing is not categorically wrong. As the Arkansas Supreme Court said when confronted with a similar issue in *Stanley v. State*, 171 Ark. 536, 537, 285 S.W. 17, 18 (1926): "A homicide is not necessarily a crime. The killing may have been an accident or entirely justifiable." Indeed, a soldier who kills the enemy in war may be thought a hero. When a question is put to a witness about some prior act for the purpose of impeaching his credibility, and the question does not show by its phrasing that the act was wrongful, an objection to it should be sustained.

Defendant's second assignment of error relates to his being required to answer over objection the question, "It was known all around town that you killed somebody weren't it?" In essence this question asked defendant to repeat informal accusations that had been made against him in the community. It was clearly an improper question under *State v. Williams, supra*, 279 N.C. 663, 185

S.E. 2d 174, and defendant's objection to it should have been sustained.

Given that the overruling of defendant's objections was error, we must now determine if it was prejudicial. *State v. Gainey,* 280 N.C. 366, 185 S.E. 2d 874 (1972). On this point, we find the present case indistinguishable from *State v. Stimpson,* 279 N.C. 716, 185 S.E. 2d 168 (1971). Defendant in *Stimpson* was charged with murder and convicted of involuntary manslaughter. While on the stand he was asked on cross-examination whether he had been indicted for murder in New York. Over objection defendant was required to answer and replied that he had been indicted for murder in New York in 1964 but "wasn't found guilty" and "wasn't sentenced for it." This Court found the failure to sustain his objection prejudicial error. It said, 279 N.C. at 725, 185 S.E. 2d at 173:

> "Defendant, on trial for murder, offered evidence and contended that the discharge of the pistol was accidental and not intentional. Under these circumstances, the admission of the testimony, for the purposes of impeachment, to the effect that he had been indicted in New York State in 1964 for murder was prejudicial."

We reach the same conclusion here.

For the reasons stated, we order that defendant receive a

New trial.

Justices BRITT and BROCK did not participate in the consideration or decision of this case.